# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

REBECCA ANN BAHLS,

Plaintiff,

vs.

REGIONAL MEDICAL CENTER,

Defendant.

No.  10-CV-2047-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*V.*     *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *3*

*VI.*   *RELEVANT RMC POLICIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*VII.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

       *A.*     *Plaintiff's FMLA Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

            *1.*     *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

            *2.*     *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

            *3.*     *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

            *4.*     *State law claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*VIII.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I.  INTRODUCTION

The matter before the court is Defendant Regional Medical Center's "Motion for Summary Judgment" ("Motion") (docket no. 23).

## II.  RELEVANT PROCEDURAL HISTORY

On June 21, 2010, Plaintiff Rebecca Ann Bahls filed a three-count Complaint (docket no. 2) against Regional Medical Center ("RMC").  The Complaint alleges: (1) wrongful termination in violation of Iowa public policy; (2) invasion of privacy; and (3) a violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a).  On August 16, 2010, RMC filed an Answer (docket no. 6).  On October 3, 2011, RMC filed the Motion.  On October 27, 2011, Plaintiff filed a Resistance (docket no. 24).  On November 7, 2011, RMC filed a Reply (docket no. 25).  In the Resistance, Plaintiff requests oral argument.  The court finds that oral argument is unnecessary.  The matter is fully submitted and ready for decision.

## III.  SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Plaintiff's claim arising under the FMLA, 29 U.S.C. § 2615(a).  *See* 28 U.S.C. § 1331.  The court has supplemental jurisdiction over Plaintiff's state law claims because they are so related to her federal claim that they "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when it "might affect the outcome of the suit under

the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, '[a nonmoving party] may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Id.* (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V.  *RELEVANT FACTUAL BACKGROUND*

Construing the facts in the light most favorable to Plaintiff, the facts are as follows. Plaintiff is a registered nurse. From 2005 until 2007, Plaintiff worked as a nurse for RMC. In 2007, Plaintiff began working for Manchester Family Medical Clinic ("the primary care clinic"). On April 1, 2009, RMC purchased the primary care clinic. RMC currently operates a hospital and two clinics in Manchester, Iowa. On the date RMC purchased the primary care clinic, Plaintiff again became an employee of RMC and continued to work at the primary care clinic. Plaintiff's obstetrician was also located at the primary care clinic. During her pregnancy, Plaintiff completed a prenatal record at the primary care clinic. The prenatal record is typically completed during an expectant mother's initial visit to the primary care clinic and includes general information about her health history and may also include identifying information and health information of the child's biological father. Subsequently, the primary care clinic sent a copy of the prenatal record to RMC's hospital to prepare for Plaintiff's impending delivery.

On August 3, 2009, Plaintiff was admitted to RMC's hospital to deliver her child.

At that time, Plaintiff was on leave from her employment pursuant to the FMLA.[1]  After Plaintiff was admitted to the hospital and while she was undergoing treatment, Plaintiff told her nurse, Jessie Baumgartner, that she wanted to make an amendment to her medical record.  Baumgartner responded, "I think I know what you're talking about."  Plaintiff's Response to Defendant's Statement of Material Facts and Statement of Undisputed Material Facts at ¶ 51.  Plaintiff's husband was not the father of the child and she wanted to remove the biological father's name from her medical record because she felt threatened by him and did not want him involved.  These circumstances were well known facts in the community.  Plaintiff informed Baumgartner and another nurse, Amy Fettkether, that she had concerns about the biological father's erratic and threatening behavior.  Both nurses were sympathetic to Plaintiff's concerns.

Plaintiff walked to the nurse's station and asked if she could make the change to her medical record.  Baumgartner said, "Yeah.  What would you like taken off?"  *Id.* at ¶ 58.  Baumgartner handed Plaintiff her personal medical chart, and Plaintiff stated that she wanted to remove the name "Tyler" and the age "28" from the hospital's copy of the prenatal form.  Baumgartner responded, "Oh, okay," *id.* at ¶ 60, and handed Plaintiff a bottle of liquid paper and told her to remove whatever she wanted to remove.  Baumgartner denies providing Plaintiff with liquid paper, but does admit to handing Plaintiff her medical chart.  Both Baumgartner and Fettkether deny that Plaintiff asked them about making a change to her prenatal form, but they do admit that they saw Plaintiff writing something down in her chart.  The hospital did not discipline Baumgartner or Fettkether for their actions.

On or about August 3 or August 6, 2009, questions arose about Plaintiff's child's

---

[1] On August 5, 2009, Plaintiff filed the Request for Family or Medical Leave due to the birth of her son.  The request was immediately granted and back-dated to begin on August 3, 2009.

birth certificate.  Kristi Kudrna, another RMC nurse, informed Rosemary Hunt, RMC's privacy officer and the supervisor of the Health Information Systems Department, that liquid paper had been used on Plaintiff's medical chart to remove the name of the biological father.  Hunt called the State of Iowa to inquire as to whether Plaintiff's birth worksheet had been completed correctly.  The State informed Hunt that the worksheet had been completed correctly.  Hunt did not investigate the use of liquid paper on Plaintiff's medical chart at that time.

On or about August 20, 2009, Hunt was again notified of the use of liquid paper on Plaintiff's medical chart.  Kudrna was preparing to send Plaintiff's file to RMC's health information and record keeping system and department.  Kudrna again observed the liquid paper and notified LeAnn Fenton, assistant manager of the obstetrician area.  Fenton notified RMC's Chief Nursing Officer, Patricia Doyle, who then contacted Hunt and reported that liquid paper had been used on Plaintiff's medical chart.  That same day, Hunt began an investigation regarding the liquid paper on Plaintiff's chart.  On August 25, 2009, Hunt contacted Brian Hunger, Vice President of Clinic Operations, about the liquid paper on Plaintiff's hospital medical chart.  Hunt interviewed Doyle, Fenton, Kudrna and Plaintiff's physician to see if they had made the change or knew the circumstances under which the information had been covered with liquid paper.

On August 25, 2009, Hunt informed Plaintiff that someone had altered her medical record and that there was a discrepancy between the record held at the hospital and the record held at the clinic.  Plaintiff informed Hunt that she made the change.  Hunt thanked Plaintiff for acknowledging that she made the change and informed Plaintiff that it was necessary to complete formal paperwork in order to amend her medical record.  Hunt then informed Plaintiff that she could be disciplined or terminated for her actions.  RMC revealed one page of Plaintiff's personal medical record, the prenatal form that had liquid paper on it, to Julie Bente, the vice president of human and facility resources.  RMC

showed Bente the medical record in her capacity as a human resources official for the sole purpose of determining what discipline, if any, should be imposed on Plaintiff. On August 28, 2009, RMC terminated Plaintiff for violating RMC policy by altering her medical record with liquid paper.

After RMC terminated Plaintiff, she attempted to amend her medical record pursuant to RMC policy. Plaintiff spoke with Michelle Paris at the primary care clinic. Plaintiff maintains that Paris did not know how to make the change and that she handed Plaintiff a blank sheet of paper. Paris did not tell Plaintiff that she needed to see RMC's privacy officer or complete a standard form. Later that same day, RMC contacted Plaintiff and provided her with a Request for Amendment of Health Information form. Plaintiff completed the form and returned it to RMC.

## *VI.   RELEVANT RMC POLICIES*

RMC has several policies that it maintains are relevant to this lawsuit. First, RMC has a written policy for staff to follow when correcting entries in a medical record (the "Policy"). *See* Defendant's Appendix in Support of the Motion ("Def. App'x") at 24. The Policy states, "At times it becomes necessary for a health care professional to make appropriate corrections in the medical record during or after a patient's hospitalization." The Policy then states:

> Erasures may create curiosity, if not suspicion, as to reasons for the change. Therefore, any corrections to be made in medical records will be done in the following way:
>
> 1. The person who made the incorrect entry should correct it.
> 2. Line out the incorrect data with a single line in ink so the entry can still be read.
> 3. The date of the lining out, signature of the person doing it, and the correct information should be added.
> 4. In margin, make notation of why the correction was made if applicable.
>
> DO NOT use erasers, liquid paper or scratch the incorrect

entry out so well that it cannot be read.

*Id.* Plaintiff argues that the Policy is inapplicable to her situation because (1) she was not acting as an employee at the time she made the change to her own medical chart and (2) she was not making a correction to an incorrect entry, but was instead amending her own medical record.

RMC also has a Confidentiality and Security Agreement, which Plaintiff signed during an employee orientation on March 19, 2009. Among other things, the Confidentiality and Security Agreement states:

> In the course of my employment/assignment at Regional Medical Center, I understand that I may come into the possession of this type of Confidential Information. I will access and use this information only when it is necessary to perform my job related duties in accordance with Regional Medical Center privacy and security policies, which are available in the individual departments, and (on the intranet if applicable).
> . . . .
> I will not in any way divulge, copy, release, sell, loan or destroy any Confidential Information except as properly authorized.
> . . . .
> I will not make any unauthorized transmissions, inquires, modifications, or purging of Confidential Information.
> . . . .
> I will act in the best interest of Regional Medical Center and in accordance with it's [sic] Code of Conduct at all times during my relationship with Regional Medical Center.
> . . . .
> I understand that violation of this Agreement may result in disciplinary action, up to and including termination of employment, suspension, and loss of privileges, and/or termination of authorization to work within Regional Medical Center, in accordance with Regional Medical Center's policies.

*Id.* at 32. Plaintiff maintains that this policy does not apply to her circumstances because

she altered her medical record while she was a patient and this policy governs the conduct of employees only.

RMC also has a Behavior of Employees policy, and on April 30, 2009, during another employee orientation, Plaintiff signed a document acknowledging that she received a copy of the policy. As relevant here, the Behavior of Employees policy states:

> The following conduct is prohibited and individuals engaged in it will be subject to discipline, up to and including termination.
>
> . . . .
>
> •      Falsifying or altering any RMC records or reports, such as an application for employment, a medical report, a medical record, a time record, an expense account, an absentee report, or shipping and receiving records.
> •      Stealing, destroying, defacing, or misusing RMC property or another employee's or customer's property.

*Id.* at 39-40. Plaintiff maintains that this policy does not apply to the circumstances of her case because she was acting as a patient when she altered her medical record.

Additionally, on April 11, 2004, Plaintiff signed a document indicating that she received a copy of RMC's Notice of Privacy Practices (the "Notice"). As relevant here, the Notice states that RMC "may use medical information about you to provide you treatment or services [and] may disclose medical information about you to doctors, nurses, technicians, medical students, or other hospital/long term care personnel who are involved in taking care of you." *Id.* at 41. The Notice further states that "[m]embers of the medical staff and/or quality improvement team may use information in your health record to assess the care and outcomes in your case." *Id.* at 42. The Notice also provides the procedure for a patient to follow if he or she wishes to amend his or her medical record. The Notice states:

> If you feel that medical information we have about you is incorrect or incomplete, you may ask us to amend the information. You have the right to request an amendment for

8

as long as the information is kept by our facility. To request an amendment, your request must be made in writing and submitted to the Privacy Officer. In addition, you must provide a reason that supports your request. We may deny your request for an amendment if it is not in writing or does not include a reason to support the request. In addition, we may deny your request if you ask us to amend information that:

- Was not created by us, unless the person or entity that created the information is no longer available to make the amendment;
- Is not part of the medical information kept by or for the hospital;
- Is not part of the information which you would be permitted to inspect and copy; or
- Is accurate and complete.

*Id.* at 43-44. Plaintiff maintains that, although she did sign a document indicating that she received a copy of the Notice, she is not certain if she ever fully read the form or if she still had the document at the time she amended her medical record. Plaintiff further maintains that she did not know the proper procedure to change her record and that the other nurses apparently did not know either, based upon their willingness to allow her to alter the record and their inability to tell her the correct procedure when she tried to amend the record after her termination.

Lastly, on March 16, 2009, Plaintiff signed a Patient Bill of Rights, which notifies patients that they have responsibilities, including the responsibility "[t]o follow hospital rules and regulations affecting patient care and conduct." *Id.* at 48.

## VII. ANALYSIS

### A. Plaintiff's FMLA Claim

#### 1. Applicable law

"The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period if he or she has a 'serious health condition that makes the employee unable

to perform the functions of the position of such employee.'" *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quoting 29 U.S.C. § 2612(a)(1)(D)).  An employee who takes FMLA leave generally has the right, upon returning from leave, to be reinstated to the position she occupied when she went on leave or to an equivalent position.  29 U.S.C. § 2614(a)(1).  It is illegal for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  *Id.* § 2615(a)(1).  "An FMLA interference claim . . . arises when an employer refuses to authorize FMLA leave, discourages an employee from using FMLA leave, manipulates in such a way as to avoid its responsibilities under the FMLA, or engages in any activity 'that deters an employee from participating in protected activities.'"  *Parsons v. Principal Life Ins. Co.*, 686 F. Supp. 2d 906, 910 (S.D. Iowa 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006)).  "In an interference claim, an 'employee must show only that he or she was entitled to the benefit denied.'"  *Stallings*, 447 F.3d at 1050 (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)).  "An employee can prevail under an interference theory if [s]he was denied substantive rights under the FMLA for a reason connected with h[er] FMLA leave."  *Id.*

"'[E]very discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights . . . .'"  *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005)).  "However, the FMLA is not a strict-liability statute."  *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010).  Thus, "'an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.'"  *Bacon*, 550 F.3d at 715 (quoting *Throneberry*, 403 F.3d at 977).  "[W]here an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery."  *Stallings*, 447 F.3d at 1051

(citing *Throneberry*, 403 F.3d at 979). "An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." *Estrada*, 616 F.3d at 871. "The burden is on the employer to prove the reason for termination was unrelated to FMLA." *Phillips*, 547 F.3d at 911; *see also Estrada*, 616 F.3d at 871 (noting that the employer bears "the burden of proving it would have made the same decision to terminate [the employee] regardless of the leave").

To establish an interference claim, Plaintiff must prove that: (1) she was an eligible employee under the FMLA; (2) Defendant is an employer under the FMLA; (3) Plaintiff was entitled to FMLA leave; (4) Plaintiff gave notice of her intent to take FMLA leave; and (5) Defendant denied Plaintiff FMLA benefits to which she was entitled. *Schoonover v. ADM Corn Processing*, No. 06-CV-133-LRR, 2008 WL 282343, at *12 (N.D. Iowa Jan. 31, 2008). It is undisputed that Plaintiff was an eligible employee and that RMC is a covered employer under the FMLA. *See* 29 U.S.C. § 2611(2) (defining "eligible employee"); 29 U.S.C. § 2611(4) (defining "employer"). Furthermore, RMC does not dispute that Plaintiff was entitled to FMLA leave and that she gave notice of her intent to take FMLA leave. *See* Defendant's Memorandum of Law in Support of the Motion ("Def. Br.") at 20. Thus, the only disputed issue is whether RMC denied Plaintiff FMLA benefits to which she was entitled.

### 2.      *Parties' arguments*

In the Complaint, Plaintiff maintains that RMC interfered with her rights under the FMLA. RMC claims that it is entitled to summary judgment on this issue because it terminated her for a reason unrelated to her FMLA leave. Specifically, RMC maintains that it terminated Plaintiff because she used liquid paper to cover up information in her medical chart in violation of hospital policy. Plaintiff counters that RMC terminated her for an unlawful reason or for a reason from which a jury could infer that her termination was because she took FMLA leave.

### 3. Discussion

Plaintiff has not produced any evidence that RMC terminated her for a reason related to her FMLA leave.  In contrast, RMC has produced evidence to support its contention that it terminated Plaintiff because she used liquid paper to cover up information in her medical chart, which RMC believed to be in violation of hospital policy.  Thus, the court concludes that RMC has demonstrated that it would have made the decision to terminate Plaintiff regardless of whether or not she took leave under the FMLA.  Consequently, Plaintiff's interference claim must fail.  *See, e.g.*, *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 934 (8th Cir. 2011) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." (quoting *Estrada*, 616 F.3d at 871) (internal quotation marks omitted)).

### 4. State law claims

Having dismissed Plaintiff's federal claim, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The court may exercise supplemental jurisdiction over claims for which it does not have original jurisdiction "that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  However, the court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "The Supreme Court has noted that, 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### *VIII.   CONCLUSION*

In light of the foregoing, it is **HEREBY ORDERED THAT**:

(1)   Defendant Regional Medical Center's "Motion for Summary Judgment" (docket no. 23) is **GRANTED IN PART** as to Plaintiff's federal claim arising under the FMLA;

(2)   The court declines to exercise supplemental jurisdiction over Plaintiff's claims arising under Iowa law; and

(3)   The Clerk of Court is **DIRECTED** to **TRANSFER** Plaintiff's two remaining state law claims to the Iowa District Court for Delaware County and to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 15th day of December, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA